Daniel T. Guidotti
**Marianas Pacific Law LLC**
2nd Floor, J.E. Tenorio Building
Middle Road, Gualo Rai
P.O. Box 506057
Saipan, MP 96950
Tel.: (670) 233-0777
Fax: (670) 233-0776

Attorney for Plaintiff
Rovie Anne Chopitea

FILED
Clerk
District Court

OCT 04 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

**ROVIE ANNE CHOPITEA,**

Plaintiff,

v.

**IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC dba Best Sunshine International and IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD.,**

Defendants.

Civil Case No. CV 17-00020

**COMPLAINT**

Plaintiff ROVIE ANNE CHOPITEA hereby alleges the following:

## INTRODUCTION

1. This is an action under Title VII of the Civil Rights of 1964, as amended ("**Title VII**") and the Equal Pay Act of 1963, as amended ("**EPA**"), to correct unlawful employment practices of race and national origin, including retaliation, and to provide appropriate relief to Plaintiff Rovie Anne Chopitea.

## JURISDICTION AND VENUE

2. Chopitea invokes the jurisdiction of the Court under Title VII, 42 U.S.C. §§ 2000e-2000e-17, 29 U.S.C. § 2617, 29 U.S.C. 206(d)(1), and 28 U.S.C. § 1331.

3. The unlawful employment practices were committed within the jurisdiction of the Commonwealth of the Northern Mariana Islands.

4. Venue is proper in the United States District Court for the Northern Mariana Islands because all of the events and omissions giving rise to the claims set forth in this complaint occurred in the Commonwealth of the Northern Mariana Islands. 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

5. Plaintiff ROVIE ANNE CHOPITEA ("**Chopitea**") is a citizen of the Republic of the Philippines who, at all times relevant, lived and worked on Saipan, Commonwealth of the Northern Mariana Islands ("**CNMI**").

6. Defendant IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC dba Best Sunshine International is a CNMI limited liability company with its principal place of business in the CNMI.

7. Imperial Pacific International, LLC's sole member is Best Sunshine International Limited, a British Virgin Islands corporation.

8. Defendant IMPERIAL PACIFIC INTERNATIONAL HOLDINGS LTD. is a Hong Kong corporation doing business in the CNMI.

9. "**IPI**" means the defendants named in paragraphs 6 and 7.

## CONDITIONS PRECEDENT

10. Chopitea exhausted her administrative remedies and complied with all Title VII statutory prerequisites prior to bringing this complaint.

11. On May 23, 2017, Chopitea filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**") in which she alleged that IPI discriminated

against her based on her race (Asian) and her national origin (Philippines). The EEOC notified IPI of the Charge of Discrimination in May or early June 2017. On July 18, 2017, Chopitea sent a revised Charge of Discrimination to the EEOC. The EEOC accepted the revised Charge of Discrimination on July 18, 2017. On August 14, 2017, Chopitea received a Notice of Right to Sue from the EEOC. Chopitea is filing this complaint less than 90 days after she received the Notice of Right to Sue.

12. On August 9, 2017, Chopitea filed a second Charge of Discrimination with the EEOC alleging discrimination on the basis of race, sex, national original, retaliation, and equal pay. On August 14, 2017, Chopitea received a Notice of Right to Sue from the EEOC. Chopitea is filing this Complaint less than 90 days after she received the Notice of Right to Sue.

## STATEMENT OF FACTS

13. On October 31, 2015, IPI hired Chopitea as a VIP Host.

14. IPI hired Chopitea as a VIP Host, she did not work as a VIP Host because she did not speak Chinese.

15. Instead, Chopitea began working at the Player's Club on November 10, 2015.

16. In November 2015, Chopitea was paid $9.00 per hour.

17. On January 11, 2016, IPI promoted Chopitea to shift supervisor and raised her wages to $16.83 per hour.

18. In July 2016, Chopitea returned to the Philippines because of an issue with her CW-1.

19. On October 3, 2016, Chopitea returned to Saipan and resumed working at the Player's Club.

20. On October 22, 2016, Lisette Pino ("**Pino**"), Chopitea's then supervisor, orally informed Chopitea that IPI was promoting her to shift manager.

21. Pino also announced to the entire department that Chopitea was the new shift manager. Pino made this announcement during a department meeting and to the department's WhatsApp group.

22. Yingshi "Jean" Romolor, a U.S. Citizen ("**Romolor**"), received a promotion to shift manager at the same time as Chopitea.

23. Chopitea's performance as shift manager was exemplary: Chopitea would regularly attend executive meetings with department heads when Lisette Pino was absent. Pino expressed to Chopitea several times that Chopitea was a good employee and that Chopitea was next in line to be shift manager.

24. IPI promised Chopitea that she would receive a raise in connection with her promotion to shift manager. IPI also promised to provide Chopitea with a performance evaluation while she was performing the shift manager job.

25. In November 2016, Gizelle Leong ("**Leong**"), an assistant director with IPI, hired David Loi, a U.S. Citizen male of Chinese descent ("**Loi**"), as a third shift manager.

26. Shortly after Loi began working as a shift manager, Chopitea discovered that Loi was being paid $55,000.00 annually to perform the exact same job as Chopitea.

27. At the time Loi began working as shift manager, IPI continued to pay Chopitea $16.83 per hour.

28. After Chopitea became shift manager, she had more responsibilities than Loi in part because was training Chopitea to be a shift manager.

29. After IPI promoted Chopitea, and particularly after she learned about what IPI was paying Loi, Chopitea followed up directly with Elaine Chao ("**Chao**"), the director of loyalty marketing, regarding Chopitea's offer letter and pay raise.

30. When Leong learned about this inquiry, she told Chopitea that Chopitea was being disrespectful for inquiring about the status of Chopitea's offer letter and pay raise.

31. Leong told Pino that Chopitea was already getting paid $16.83 and that Chopitea should be thankful and know what is good for her.

32. On February 1, 2017, Chopitea emailed Chao, the department director, regarding her salary adjustment as a shift manager—Chao responded that IPI would address Chopitea's salary increase during team salary review.

33. Leong and other IPI management employees dismissed Chopitea's inquiries into her pay raise and offer letter.

34. In mid-February 2017, Chopitea learned that Romolor had received her offer letter for the shift manager position and a corresponding pay raise even though Chopitea hadn't received her offer letter.

35. In March 2017, and after months of inquiring about her pay raise and offer letter, Chopitea filed a grievance with Redie Dela Cruz at the IPI human resources department in accordance with IPI company procedures.

36. In her grievance, Chopitea asserted that IPI was discriminating against her because she was Filipina and was a citizen of the Republic of the Philippines.

37. A month later, human resources informed Chopitea that human resources would process her complaint within seven days, but human resources never took action on the matter.

38. After receiving no response from the human resources for over a month, Chopitea filed EEOC Charge No. 486-2017-00280 on May 23, 2017 in which she alleged that IPI discriminated against her because she was Filipina and was a citizen of the Republic of the Philippines.

39. Prior to filing the EEOC complaint, Chopitea informed senior management officials that she was going to file an EEOC complaint.

40. IPI senior management officials informed Chopitea that IPI would not retaliate against her for filing an EEOC complaint.

41. Chao, Loi, and Leong knew that Chopitea was filling the EEOC complaint in May 2017.

42. The EEOC notified IPI of EEOC Charge No. 486-2017-00280 in late May or early June 2017.

43. On or about May 24, 2017, Chopitea flew back to the Philippines to be with her husband while her husband underwent medical treatment.

44. Although Chopitea was intending to return to IPI in May, she informed Leong in writing that she would like to remain in the Philippines through July 10 due to her husband's surgery.

45. Leong approved Chopitea's request to extend her time off after Chopitea presented Leong with a medical certificate from her husband's doctor.

46. On Chopitea's first day back at work, Leong called Chopitea to a meeting with the human resources department.

47. At this meeting, Leong and human resource representatives questioned Chopitea about days that Chopitea allegedly failed to show up for work in April 2017 and May 2017 even though Chopitea had previously requested those days off and had cleared her absence with management.

48. In reality, Chopitea had obtained official approval for all of the days that Chopitea had taken off from work.

49. Leong also stated that Chopitea was under investigation for the time she spent in the Philippines, even though Leong had approved it.

50. In reality, Leong called Chopitea to human resources in order to harass Chopitea for filing the grievance and the Charge of Discrimination with the EEOC.

51. After the meeting at the human resources department, Leong began a campaign of retaliation against Chopitea.

52. A colleague of Leong and Chao disclosed to other employees at the Player's Club that IPI was going to terminate Chopitea.

53. Leong began scrutinizing Chopitea's performance and requiring that other employees worked under Chopitea report to Leong regarding Chopitea's performance.

54. Leong and Loi changed Chopitea's work schedule to cause Chopitea distress and inconvenience.

55. Although Chopitea asked Leong and Loi many times to restore her old work schedule because she was having transportation issues, Leong and Loi refused.

56. Three days after returning from work, and after a second meeting with the human resources department, Chopitea had an emotional breakdown as a result of the treatment she received from Chao, Leong, Loi, and other IPI employees.

57. That same day, Chopitea requested sick leave and informed Leong that she was unable to work because of the stress caused by Leong and Loi.

58. Leong denied Chopitea's request for sick leave and forced Chopitea to work.

59. The following day, Chopitea went to see a doctor. The doctor informed Chopitea that Chopitea was suffering from hypertension.

60. Chopitea's work situation continued to deteriorate throughout July and Chopitea continued to suffer from hypertension.

61. Leong's behavior toward Chopitea made it impossible for Chopitea to perform Chopitea's regularly assigned job duties.

62. Leong ignored Chopitea, refused to assign Chopitea work, and otherwise treated Chopitea with open hostility.

63. On July 24, 2017, and after 10 months of working as a shift manager and without receiving her promised pay raise, IPI suddenly delivered a letter to Chopitea stating that Chopitea had merely assumed that IPI had promoted her and that the promotion was a misunderstanding.

64. Chopitea perceived that this letter was a demotion.

65. Upon receiving the July 24 letter, Chopitea questioned Chao and Leong why they had not previously informed her that she was not promoted when Chao and Leong knew of and encouraged Chopitea to perform the work of shift manager during the preceding 10 months.

66. IPI sent this letter to Chopitea despite Chopitea having performed satisfactorily as a shift manager for the preceding 10 months.

67. In response to the July 24 letter from IPI, Chopitea sent a resignation letter to her department head giving 30 days' notice because the hostile work environment created by Leong caused Chopitea's hypertension to worsen.

68. A few days later, Chopitea sent a letter altering her resignation to two weeks' notice because Chopitea was suffering from ongoing hypertension.

69. The following day, and without warning or explanation, IPI disabled Chopitea's email account.

70. IPI failed to follow its own internal procedures when it disabled Chopitea's email account.

71. When Chopitea inquired as to why IPI deactivated her email account, IPI personnel told Chopitea not to show up for work the following day.

72. When Chopitea asked a second time why her work email was disabled, Chao told Chopitea to wait for human resources to contact her.

73. A week later, Chopitea received an email from the human resources department inviting Chopitea to a meeting with the Philippine Consul.

74. While Chopitea was meeting with the Philippine Consul, IPI staff told Chopitea that IPI would pay for Chopitea's repatriation to the Philippines but that in exchange, Chopitea must sign a piece of paper stating that Chopitea would not sue IPI.

75. Human resources personnel at IPI attempted to discourage Chopitea from pursuing her discrimination case, telling her that even though she had filed a complaint with the EEOC, it did not mean she had a case.

## CAUSE OF ACTION 1: DISCRIMINATION UNDER TITLE VII
### (Based on race and national origin)

76. Chopitea realleges and incorporates by reference every allegation set forth in paragraphs 1-75.

77. Chopitea is a citizen of the Republic of the Philippines and is of Filipino descent.

78. Romolor and Loi are U.S. Citizens of Chinese descent.

79. In October 2016, IPI promoted Chopitea to shift manager at the Player's Club and promised that Chopitea would receive a promotion together with a raise.

80. At all times, Chopitea's job performance was satisfactory.

81. Despite informing Chopitea about the pay raise and the increase in job responsibilities, IPI never honored the promised pay raise.

82. Romolor, who was promoted at the same time as Chopitea, received an offer letter and a pay raise.

83. Chopitea's race and national origin were the sole reasons that IPI decided to demote Chopitea and deny Chopitea the previously promised pay raise.

84. To wit: Romolor is a U.S. Citizen of Chinese descent and Chopitea is a citizen of the Republic of the Philippines and is of Filipino descent.

85. In November 2016, IPI hired Loi, a U.S. Citizen male of Chinese descent ("**Loi**"), to perform the same job as Chopitea.

86. Chopitea discovered that Loi was being paid $55,000.00 annually to perform the same work as Chopitea.

87. IPI would have honored Chopitea's promotion and promised pay raise had Chopitea been a U.S. citizen or of Chinese descent.

## CAUSE OF ACTION 2: RETALIATION

88. Chopitea realleges and incorporates by reference every allegation set forth in paragraphs 1-87.

89. In March 2017, Chopitea filed a grievance with Redie Dela Cruz at the IPI human resources department in accordance with IPI company procedures.

90. In her grievance, Chopitea asserted that IPI was discriminating against her because she was Filipina and was a citizen of the Republic of the Philippines.

91. After IPI ignored Chopitea's March 2017 grievance for two months, Chopitea filed EEOC Charge No. 486-2017-00280 on May 23, 2017 in which she alleged that IPI discriminated against her based upon her race (Filipino) and national original (citizen of the Republic of the Philippines).

92. Chao, Loi, and Leong knew that Chopitea was filling the EEOC complaint in May 2017.

93. The EEOC formally notified IPI of EEOC Charge No. 486-2017-00280 in late May or early June 2017.

94. After Chopitea returned from an off-island trip that lasted from May 24, 2017 through July 10, 2017, IPI retaliated against Chopitea.

95. Leong began scrutinizing Chopitea's performance and requiring that other employees who worked under Chopitea report to Leong regarding Chopitea's performance.

96. Leong and Loi changed Chopitea's work schedule to cause Chopitea distress and inconvenience.

97. Although Chopitea asked Leong and Loi many times to restore her old work schedule because she was having transportation issues, Leong and Loi refused.

98. Three days after returning from work, and after a second meeting with the human resources department, Chopitea had an emotional breakdown as a result of the treatment she received from Chao, Leong, Loi, and other IPI employees.

99. That same day, Chopitea requested sick leave and informed Leong that she was unable to work because of the stress caused by Leong and Loi.

100. Leong denied Chopitea's request for sick leave and forced Chopitea to work.

101. Leong ignored Chopitea, refused to assign Chopitea work, and otherwise treated Chopitea with open hostility.

102. On July 24, 2017, and after 10 months of working as a shift manager, IPI demoted Chopitea in a letter which essentially stated that Chopitea had imagined the promotion.

103. In response to the July 24 letter from IPI, Chopitea sent a resignation letter to her department head giving 30 days' notice because the hostile work environment created by Leong caused Chopitea's hypertension to worsen.

104. A few days later, Chopitea sent a letter altering her resignation to two weeks' notice because Chopitea was suffering from ongoing hypertension.

105. A week later, in response to an email from the human resources department, Chopitea met with IPI representatives and the Philippine Consul.

106. While Chopitea was meeting with the Philippine Consul, IPI staff told Chopitea that IPI would pay for Chopitea's repatriation to the Philippines but in exchange for receiving repatriation, Chopitea must sign paper stating that Chopitea would not sue IPI.

107. Human resources personnel at IPI attempted to discourage Chopitea from pursuing her discrimination case, telling her that even though she had filed a complaint with the EEOC, it did not mean she had a case.

108. All of the foregoing actions that IPI took against Chopitea are adverse employment actions because a reasonable employee in Chopitea's position would have been dissuaded from making or supporting a charge of discrimination.

109. IPI would not have subjected Chopitea to these adverse employment actions but for Chopitea's participation in protected activity, to wit: because Chopitea filed a grievance with IPI human resources and a Charge of Discrimination with the EEOC each alleging that one or more IPI employees discriminated against Chopitea based upon Chopitea's race and national origin.

110. Both Chopitea's grievance and the EEOC Charge of Discrimination are activities protected by Title VII.

## CAUSE OF ACTION 3: EQUAL PAY ACT

111. Chopitea realleges and incorporates by reference every allegation set forth in paragraphs 1-109.

112. On October 22, 2017, when Pino informed Chopitea that IPI was promoting Chopitea to Player's Club shift manager, Chopitea earned $16.83 per hour.

113. After IPI promoted Romolor to shift manager, and after Romolor received the corresponding pay raise, Romolor made approximately $18.00 per hour.

114. Chopitea and Romolor are female.

115. In Novmeber 2016, IPI hired Loi as a shift manager at the Player's Club.

116. Loi received approximately $25.00 per hour as a shift manager.

117. Loi is male.

118. Romolor and Chopitea performed work as Player's Club shift managers of substantially equal skill, effort, responsibility, as compared to Loi.

119. In fact, Chopitea actually had more responsibility and exerted greater efforts than Loi yet received substantially less pay.

120. Chopitea Romolor and Loi performed their jobs under substantially similar working conditions: all three worked in the Player's Club at IPI.

121. Romolor and Chopitea performed substantially equal work to Loi, but received approximately 33% less compensation for substantially equal work.

## PRAYER FOR RELIEF

Chopitea respectfully prays for relief against IPI as follows:

- Award back pay with prejudgment interest, in amounts to be determined at trial, plus other affirmative relief necessary to eradicate the effects of IPI's unlawful employment practices;
- Award compensation for post and future non-pecuniary losses resulting from IPI's unlawful employment practices, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be proven at trial;
- Award punitive damages because IPI treated Chopitea with malice and reckless indifference;
- Compensate Chopitea for her costs and attorneys' fees;
- Award liquidated damages for all back pay awarded because IPI willfully violated the EPA;

//

//

//

- Award reasonable costs and attorney's fees; and
- Grant any other relief that the Court deems just and proper.

Dated: October 4, 2017

Respectfully submitted,
MARIANAS PACIFIC LAW LLC

By: _____
Daniel T. Guidotti, F0473
Attorney for Rovie Anne Chopitea